1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  CARL FOUNTAIN,

11           Plaintiff,                  No. CIV S-10-2633 KJM DAD P

12      vs.

13  A. LEBRON, et al.,

14           Defendants.               FINDINGS & RECOMMENDATIONS

15  _____/

16           Plaintiff, a state prisoner proceeding with counsel, has filed a civil rights action

17  pursuant to 42 U.S.C. § 1983.  Before the court is a motion for summary judgment filed on

18  behalf of defendants Gonzalez[1], Cooper and Lebron.  Plaintiff has filed his opposition to the

19  motion and defendants have filed a reply.  A hearing on the motion was held on March 9, 2012

20  before the undersigned.  Attorney David Springfield appeared on behalf of plaintiff, and attorney

21  Mitchell Wrosch of Burke, Williams & Sorenson, LLP, appeared telephonically on behalf of

22  defendants.

23  /////

24  /////

25  _____

26      [1] Defendants' counsel has indicated that the correct spelling of defendant Gonzales' name is "Gonzalez."  The court will use the correct spelling.

**PROCEDURAL BACKGROUND**

On September 28, 2010, plaintiff filed this § 1983 action pro se.  On April 27, 2011, the court determined that plaintiff has stated a cognizable Eighth Amendment claim as to defendants Lebron, Cooper and Gonzalez.  (Doc. No. 12 at 2.)  However, the court did not order service on supervisory defendants Warden Martel and Director Cate named in plaintiff's complaint.  (Id.)

On July 18, 2011, defendants Cooper and Gonzalez filed a motion to dismiss plaintiff's Eighth Amendment claim brought against them in their official capacities, as well as, plaintiff's prayer for injunctive relief.  On December 22, 2011, findings and recommendations were issued recommending that plaintiff's monetary damages claims against the defendants, including defendant Lebron, in their official capacities be dismissed and that plaintiff's request for injunctive relief be dismissed as well.  (Doc. No. 44.)  On March 20, 2012, those findings and recommendations were adopted by the assigned District Judge.  (Doc. No. 66.)

On July 28, 2011, the court's discovery and scheduling order was issued.  (Doc. No. 30.)  Pursuant to that order, discovery closed on November 14, 2011.  (Id. at 6.)  The date for the filing of dispositive motions closed on February 3, 2012.  (Id.)

On September 27, 2011, the court granted plaintiff's request to substitute attorney David Springfield in as his counsel.  (Doc. No. 42.)

On February 3, 2012, defendants filed their motion for summary judgment supported by declarations from defendants Lebron, Cooper and Gonzalez, correctional officer Hernandez, defense counsel and correctional counselor Giovacchini.  (Doc. No. 46.)

On February 24, 2012, plaintiff filed his opposition to the motion for summary judgment along with his own declaration, evidentiary objections to the declarations of Gonzalez,

/////

/////

/////

2

1    Hernandez, Lebron and Cooper, the declaration of plaintiff's counsel[2], appendix of evidence in

2    support of the opposition, plaintiff's response to defendants' separate statement of undisputed

3    facts, supplemental evidentiary objections to the Hernandez declaration, and plaintiff's own

4    supplemental declaration.  (Docs. No. 47, 48, 50, 51, 52, 53, 54, 55, 56, 57 & 58.)

5            On March 2, 2012, defendants filed their reply along with the declaration of

6    counselor Giovacchini, defendants' objections to plaintiff's declarations, defendants' opposition

7    to plaintiff's evidentiary objections, defendants' opposition to plaintiff's separate statement of

8    undisputed facts, and defendants' reply to plaintiff's response to statement of undisputed facts.

9    (Docs. No. 59, 60, 61, 62, 63 & 64.)

10                              **PLAINTIFF'S COMPLAINT**

11           In his complaint plaintiff alleges as follows.  On November 8, 2009, plaintiff was

12   housed with inmate Augustine at Mule Creek State Prison.  Defendant correctional sergeant

13   Gonzalez was aware that inmate Augustine did not want plaintiff as a cellmate, that inmate

14   Augustine's previous cellmate, inmate Rathsack, was moved out of the cell they shared because

15   he was being threatened by inmate Augustine, and that inmate Augustine suffers from a mental

16   illness.  (Doc. No. 1 at 7-8.)  Defendant Gonzalez told plaintiff that the cell assignment with

17   Augustine would be for one night and that he would make arrangements to rehouse plaintiff.  (Id.

18   at 8.)  However, plaintiff continued to be housed with inmate Augustine from November 2009 to

19   January 14, 2010.  (Id. at 9.)  At an unspecified date, plaintiff told defendant Sgt. Cooper that

20   inmate Augustine had threatened to cut plaintiff's throat if he did not move to another cell.  (Id.)

21   Several times in December of 2009, plaintiff told defendant Sgt. Cooper that his life was in

22   danger at the hands of inmate Augustine.  (Id.)  Plaintiff also attempted to inform mental health

23   staff about inmate Augustine.  (Id.)  On January 13, 2010, plaintiff talked to defendant Lebron, a

24

25       [2]  Counsel for plaintiff explains that several documents submitted in opposition to
     defendants' motion for summary judgment were filed one day late because of delays in the
     sending and receiving of mail by plaintiff.  Good cause appearing, the court deems plaintiff's
26   opposition and supporting documents to be timely filed.

1   licensed clinical/psychiatric social worker about the threats on his life being made by inmate

2   Augustine.  (Id. at 10.)

3           On January 14, 2010, inmate Augustine struck plaintiff in the "facial area" and

4   began "strangling" him.  (Id. at 10-11.)  Pepper spray had to be used to subdue inmate Augustine.

5   (Id. at 11.)  Plaintiff suffered injuries to his "facial area[,]" "swelling above his eyes, nose, and

6   forehead[,]" and injury to his neck and shoulder.  (Id.)

7           Plaintiff claims that his rights under the Eighth Amendment were violated due to

8   defendants' failure to protect him from a known risk of harm by his cellmate (id. at 11-13), and

9   the defendants' subjecting him to cruel and unusual punishment by depriving plaintiff of

10   "personal safety" (id. at 14-15).  Plaintiff seeks $900,000 in compensatory damages, $900,000 in

11   punitive damages and costs of suit.  (Id. at 15.)[3]

12                           **THE PARTIES' ARGUMENTS**

13   I.  Defendants' Motion for Summary Judgment

14           Defendants argue that they are entitled to summary judgment because plaintiff

15   cannot show that they were aware that plaintiff faced a substantial risk of harm and that they

16   deliberately disregarded that risk.  (Doc. No. 46 at 14-15.)  First, they argue that plaintiff's

17   allegations regarding daily threats made by Augustine and daily assaults he suffered at the hands

18   of inmate Augustine for seventy-five straight days, "strain credulity" and lack any kind of

19   evidentiary support.  (Id. at 15.)  Next, defendants argue that there were several steps plaintiff

20   could have taken to alert prison staff that he was experiencing a problem with his cellmate:  (1)

21   submit a CDC Form 7362 to request an interview which would have resulted in the issuance of a

22   CDC Form 128B informational chrono; (2) submit an inmate grievance or an emergency

23   grievance; (3) refuse to reenter his cell; (3) report his cellmate as an enemy which would

24

25         [3] Plaintiff had also requested injunctive relief to prevent retaliation against him in the
future but the injunctive relief claim was dismissed by the court on March 20, 2012.  (Doc. No.

26   66.)

4

1    generated a CDC Form 812, Notice of Critical Case Information - Safety of Persons (Non-

2    Confidential Enemies).  (Id. 16-17.)

3              Defendant Gonzalez states in his declaration that he has no recollection of

4    plaintiff or if him formally or informally requesting a cell move away from inmate Augustine but

5    that if he did make such a request it would have been investigated and noted in his central file.

6    However, defendants contend that there is a critical piece of evidence that "debunks the myth that

7    Fountain alerted the defendants to a threat of his safety."  (Id. at 17.)  According to defense

8    counsel, on January 13, 2010, the day before the assault, both inmate Augustine and plaintiff

9    were interviewed by correctional officer Hernandez regarding their housing.  (Id.)  When plaintiff

10   was interviewed and asked about his compatibility with inmate Augustine, plaintiff did not

11   express any safety concerns and when asked if he would like to be moved to another cell,

12   plaintiff replied, "no, I'm trying to figure out a move so that I can stay in Building 11.  I don't

13   want to move to another building.  I'll let you know."  (Id. at 18.)  Thus, defendants argue that

14   the evidence establishes that plaintiff failed to put defendants Cooper and Gonzalez on notice of

15   any threat to his safety and defendants were not deliberately indifferent to plaintiff's safety.

16             As to defendant Lebron specifically, defendants argue that plaintiff again has

17   provided no evidence to support his allegations.  (Id. at 19.)  Defense counsel asserts that on

18   November 30, 2009, defendant Lebron evaluated plaintiff who at that time mentioned that inmate

19   Augustine was "disruptive" and was affecting plaintiff's sleep.  (Id.)  Defendant Lebron contends

20   that she interpreted this to mean that inmate Augustine was exhibiting erratic behavior but that

21   there was no reason to believe that such behavior posed a threat of harm to plaintiff.  (Id.)

22   Defendant Lebron contends that plaintiff did not express any safety concerns about Augustine

23   nor did plaintiff state that prison staff had been notified about any such concerns.  (Id. at 20.)

24             Lastly, defendants argue that they are entitled to summary judgment based upon

25   qualified immunity because they reasonably believed that their actions were lawful.  (Id. at 22.)

26   They contend that "[n]one of the defendants would have been on notice that failing to prevent a

5

1    risk to the safety of an inmate without having notice of the risk is unlawful, as no case law so

2    holds." (Id.)

3    II.  Plaintiff's Opposition

4            Plaintiff argues that all the defendants were aware of inmate Augustine's history

5    of violence and that because of plaintiff's repeated complaints and requests for transfers,

6    defendants were also on notice of the serious risk of harm to plaintiff's safety posed by inmate

7    Augustine.  In his declaration under penalty of perjury, plaintiff states that for approximately

8    seventy-five days (November 1, 2009 to January 14, 2010), he "was threatened with his life

9    daily, was daily assaulted, beaten and the incidents of violence, threats and aggression increased

10   over time in frequency, severity and intensity." (Doc. No. 48, ¶ 8 at 2.)  Plaintiff also states in his

11   declaration that he "complained almost daily to Defendant Cooper or other officers, as well as

12   multiple times to Defendant Lebron, a mental health professional and repeatedly requested a

13   transfer." (Id. ¶ 9 at 2-3.)

14           In a supplemental declaration, plaintiff states that he did not submit a form 7362

15   (request for interview) because defendant Sgt. Cooper discouraged him from submitting that

16   form.  (Doc. No. 57, ¶ 2 at 1.)  Plaintiff also states that he did not believe that he could refuse to

17   enter his cell and had observed that disobeying staff orders would result in worse treatment by

18   staff, as well as, retaliation.  (Id., ¶ 3 at 2.)  Plaintiff declares that he attempted to show his

19   physical injuries to defendant Lebron and that she refused to view them and "brushed it off[.]"

20   (Id., ¶4 at 2.)  Plaintiff also asserts that he was "never interviewed or questioned by Officer

21   Hernandez [and that his] declaration is false." (Id., ¶ 5 at 2.)

22           Plaintiff has also submitted the declarations of four inmates in support of his

23   opposition to the defendants' motion.  In particular, the court notes the declaration of two inmate

24   witnesses.  Inmate Willie Vernon declares as follows under penalty of perjury:

25           1.  From November 2, 2009, up to and through January 13, 2010, I
             was personally with Mr. Fountain when he made attempts to
26           explain to both Ms. Lebron and Sgt. Cooper his life was in grave

                                        6

1       and imminent danger from his cell mate Augustine.

2           2.  I was present with Mr. Fountain when he told her that
        Augustine just threatened his life (Defendant A. Lebron) [sic].  I do
3       recall Ms. Lebron being very sarcastic when approached by Mr.
        Fountain on several occasions at least 20 instances.
4
            3.  I do remember Mr. Fountain try and show Ms. Lebron his slap
5       and punch markings from Augustine from the beatings he endured
        from his cell mate and Ms. Lebron told Mr. Fountain that she
6       didn't care and go and talk to the sergeant.

7                                         * * *

8           6.  I witnessed Mr. Fountain walk up to Sergeant Cooper on the
        yard and tell him his life was in danger and that Augustine just
9       threatened to cut his throat.  I further witnessed Mr. Fountain bring
        to Sergeant Cooper's attention that Augustine brandished a
10      razorblade on a comb and Cooper said he wasn't going to do
        anything about these statements including investigate the dangers
11      known to him from Mr. Fountain.  I witnessed Mr. Fountain speak
        about his dangers to various staff.
12

13  (Doc. No. 54-1 at 2-3.)

14          Similarly, inmate Michael Gilbert declares as follows under penalty of perjury:

15          1.  From November 1, 2009, through January 14, 2010 I was
        housed in cell C-11-111U next door to Mr. Fountain in C-11-
16      112U.  During the full month of November 2009 and December
        2009, I personally witnessed Mr. Fountain make constant efforts to
17      inform Sergeant Cooper and Ms. A. Lebron, as well as several staff
        members that his life was in danger and he needed a cell change.
18
            2.  Majority of these attempts to inform Sergeant Cooper and Ms.
19      Lebron I was with Mr. Fountain and Mr. Willie Vernon.

20          3.  I witnessed Mr. Fountain telling Sergeant Cooper that
        Augustine just threatened his life and to investigate these claims
21      because Augustine was ready to explode.  I also witnessed Ms.
        Lebron tell Mr. Fountain that she did not want to hear about the
22      punchings and beatings from Augustine, and that she told Mr.
        Fountain to go and talk to the sergeant.  Mr. Fountain, Willie
23      Vernon, and myself, all were seeking to get Sergeant Cooper and
        Ms. Lebron and several other staff members to listen to Mr.
24      Fountain's threats and beatings to no avail.

25          4.  On January 13, 2010, I was personally with Mr. Fountain and he
        was not interviewed by Mr. Hernandez regarding his compatibility
26      issues with Augustine.  On such day, January 13, 2010, officer K.

                                        7

1            Clenden was working in building C-11 and Hernandez was off that
2            day.

3 (Doc. No. 54-3 at 2-3.)

4 III.  Defendants' Reply

5            Defendants argue that plaintiff's allegations concerning his daily beatings over a

6 seventy-five day period is "preposterous" in light of the fact that plaintiff never refused to enter

7 his cell and never filed an administrative grievance.  (Doc. No. 59 at 1.)  Defendants argue that

8 plaintiff has not offered any medical evidence to support his claim of having been the victim of

9 daily beatings and that plaintiff never even submitted a sick call slip.  (Id. at 4.)  Defendants

10 argue they are entitled to summary judgment because plaintiff failed to reduce his claimed safety

11 concerns to paper before the incident and never informed defendants of his risk for harm.  (Id. at

12 1.)  Defendants also refer again to the 128-B chrono which show that the day before the incident,

13 plaintiff declined a cell move.  (Id. at 1-2.)  Defendants assert that in light of this evidence, no

14 reasonable juror could conclude that defendants were aware that plaintiff faced a substantial risk

15 of harm and nonetheless failed to prevent that harm.  (Id. at 2.)

16            As to the defendants' claimed deliberate indifference, defense counsel argues that

17 defendant Gonzalez's lack of recollection of plaintiff does not mean that plaintiff's declaration

18 should be given more weight.  (Id. at 3-4.)  Moreover, counsel argues that if plaintiff had

19 complained about his safety concerns, the evidence is that defendant Gonzalez would have

20 conducted an investigation, documented the concerns, and would have taken action.  (Id.)  As to

21 defendant Cooper, defense counsel argues that if plaintiff had complained to him for seventy-five

22 straight days about his safety concerns and being subjected to abuse by his cellmate, there should

23 be some written record such as medical evidence, a Form 7362 request for interview, sick call

24 slips, or an administrative grievance reflecting the same.  (Id. at 4.)  As for defendant Lebron,

25 defense counsel emphasizes that she has declared that plaintiff's complaint about inmate

26 Augustine's disruptive behavior involved Augustine being noisy or snoring and that she had no

1   reason to believe that Augustine's alleged behavior as reported by plaintiff posed a threat to him.

2   (Id. at 4-5.)

3           Lastly, defense counsel argues that all of the defendants are entitled to qualified

4   immunity because they were not placed on notice that their conduct was unlawful.  (Id. at 6.)

5   evidentiary challenges

6                   **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

7           Summary judgment is appropriate when it is demonstrated that there exists "no

8   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

9   matter of law."  Fed. R. Civ. P. 56(c).

10              Under summary judgment practice, the moving party
                always bears the initial responsibility of informing the district court
11              of the basis for its motion, and identifying those portions of "the
                pleadings, depositions, answers to interrogatories, and admissions
12              on file, together with the affidavits, if any," which it believes
                demonstrate the absence of a genuine issue of material fact.
13

14   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

15   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

16   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

17   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

18   after adequate time for discovery and upon motion, against a party who fails to make a showing

19   sufficient to establish the existence of an element essential to that party's case, and on which that

20   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

21   concerning an essential element of the nonmoving party's case necessarily renders all other facts

22   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

23   whatever is before the district court demonstrates that the standard for entry of summary

24   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

25           If the moving party meets its initial responsibility, the burden then shifts to the

26   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

1   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

2   establish the existence of this factual dispute, the opposing party may not rely upon the

3   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

4   form of affidavits, and/or admissible discovery material, in support of its contention that the

5   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

6   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

7   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

8   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

9   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

11  1436 (9th Cir. 1987).

12         In the endeavor to establish the existence of a factual dispute, the opposing party

13  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

14  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

15  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

16  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

17  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

18  committee's note on 1963 amendments).

19         In resolving the summary judgment motion, the court examines the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

21  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

22  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

23  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

24  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

25  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

26  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

2   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

3   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

4   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

5                               **APPLICABLE LEGAL STANDARDS**

6   I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

7              The Civil Rights Act under which this action was filed provides as follows:

8              Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the
9              deprivation of any rights, privileges, or immunities secured by the
               Constitution . . . shall be liable to the party injured in an action at
10             law, suit in equity, or other proper proceeding for redress.

11  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

12  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

13  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

14  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

15  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

16  omits to perform an act which he is legally required to do that causes the deprivation of which

17  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

18             Moreover, supervisory personnel are generally not liable under § 1983 for the

19  actions of their employees under a theory of respondeat superior and, therefore, when a named

20  defendant holds a supervisorial position, the causal link between him and the claimed

21  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

22  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

23  allegations concerning the involvement of official personnel in civil rights violations are not

24  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

25  /////

26  /////

II. Eighth Amendment and Failure to Protect Claim

It is well established that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the cruel and unusual punishment clause of the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994); Helling v. McKinney, 509 U.S. 25, 31-32 (1993); Wilson v. Seiter, 501 U.S. 294, 302 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'" Id. at 834. However, prison officials do not incur constitutional liability for every injury suffered by a prisoner. Id. A prison official violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. Under this standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety. Id. at 834. Deliberate indifference does not require that the official believe "to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). On the other hand, "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." Davidson v. Cannon, 474 U.S. 344, 347 (1986). In order to avoid a finding of deliberate indifference, prison officials may show, for example:

> that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

Farmer, 511 U.S. at 844.

/////

/////

**ANALYSIS**

I.  Disputed Material Fact

Here, the court finds that it is a disputed issues of material fact as to whether defendants were aware that plaintiff faced a substantial risk of serious harm from his cellmate. Defendants take the position that they were unaware of any risk of harm to plaintiff based on the absence of documentary evidence indicating as much and plaintiff's failure to request a cell change the day before the assault.  In addition, defendants argue that a reasonable jury could not believe that plaintiff suffered abuse from his cellmate for seventy-five consecutive days as he now claims.  In his opposition to the pending motion for summary judgment, plaintiff has submitted his own declaration and those of several inmate witnesses, all executed under penalty of perjury.  In those declarations it is specifically stated by plaintiff's witnesses that the defendants were aware of the serious risk of harm posed to plaintiff because the witnesses were present when the defendants were made aware of that risk.

As to defendant Gonzalez, plaintiff declares that he informed defendant Gonzalez that he did not want to share a cell with inmate Augustine.  (Doc. No. 48, ¶ 5 at 2.)  Plaintiff also contends that defendant Gonzalez was present when inmate Augustine threatened plaintiff.  (Id.) As to defendants Cooper and Lebron, plaintiff declares that on several occasions he informed both of them that he wanted to be moved because he feared for his safety at the hands of inmate Augustine.  (Doc. No. 48, ¶ 9 at 2-3.)  As noted above, in support of his contentions in this regard plaintiff has submitted the sworn declarations of inmates Willie Vernon and Michael Gilbert who contend that they were present when plaintiff informed defendants Lebron and Cooper that he feared for his safety at the hands of his cellmate.  (Doc. No. 54-1.)

Plaintiff has clearly carried his burden of establishing that a genuine disputed issue of material fact exists.  A jury will be required to resolve the parties' factual dispute as to whether defendants had notice that plaintiff faced a substantial risk of harm from his cellmate.  In resolving that dispute, the trier of fact will consider the credibility of the parties and their

13

1    witnesses and determine the weight to give to that testimony.  However, at the summary

2    judgment stage of the proceedings, the court may not make such credibility determinations nor

3    may the court weigh the evidence.  Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009).[4]

4             In light of the disputed issues of material fact, defendants' motion for summary

5    judgment should be denied.

6    II. Defendants' Evidentiary Objections

7             Defendants have objected to portions of plaintiff's declaration as hearsay.

8    Specifically they object to plaintiff's statements about defendant Gonzalez's knowledge of both

9    inmate Augustine's history of violence and threatening his prior cellmate, inmate Rathsack.

10   (Doc. No. 61 at 2-3.)  The court has not relied on these statements in determining that there are

11   disputed issues of material fact precluding summary judgment in this case.  Therefore,

12   defendants' objection will be overruled.

13            As to defendants' objection that plaintiff's affidavit was not properly signed, the

14   objection is also overruled.  Plaintiff is represented by counsel who has indicated that he retains

15   plaintiff's declaration bearing an original signature as opposed to the "/s/" version filed

16   electronically with the court.  In addition, such a challenge to the form of the evidence, rather

17   than the content is unpersuasive.  See Fraser v Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)

18   ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.

19

--------

20            [4]  The court also notes that there are other disputed issues of material fact.  For example,
     it is disputed whether plaintiff refused a cell move the day before he was assaulted by his
21   cellmate and whether plaintiff was interviewed by correctional officer Hernandez.  Plaintiff
     declares that he repeatedly requested a transfer (Doc. No. 48 ¶ 9 at 2-3) and that he was never
22   interviewed by defendant Hernandez.  (Doc. No. 57, ¶ 5 at 2.)  Plaintiff has also submitted the
     sworn declaration of inmate Gilbert who states that he was with plaintiff on January 13, 2010,
23   and that plaintiff was not interviewed by officer Hernandez on that day.  (Doc. No. 54-3, ¶ 4 at
     3.)  Contrary to those assertions, officer Hernandez states in his declaration that he interviewed
24   plaintiff on January 13, 2010, that plaintiff did not express any safety or security concerns and
     refused a cell move.  (Doc. No. 46-2, ¶ 5 at 25.)  Defendants attach a copy of the informational
25   chrono providing a summary of that interview.  (Id. at 27.)  Factual disputes such as these are for
     the trier of fact to resolve based upon their credibility determinations.  They cannot be resolved
26   by way of summary judgment.

1   We instead focus on the admissibility of its contents.").

2          Defendants have also objected to the declarations of plaintiff's inmate witnesses,

3   Bruce Campbell, Michael Gilbert, and Kenneth Martinez.  The court has not relied on the

4   declarations of Bruce Campbell and Kenneth Martinez in ruling on defendants' motion for

5   summary judgment.  Therefore, the court will overrule defendants' objections as to the

6   declarations of those inmates.

7          As to inmate Gilbert, defendants object to the following statement in his

8   declaration:

9          4.  On January 13, 2010, I was personally with Mr. Fountain and he
            was not interviewed by Mr. Hernandez regarding the compatibility
10         issues with Augustine.  On such day, January 13, 2010, officer K.
           Clenden was working in building C-11 and Hernandez was off that
11         day.

12  (Doc. 54-3 at 3; Doc. No. 61 at 6.)  Defendants argue that this statement "strains credulity, as

13  Gilbert cannot honestly testify that he accompanied Fountain every second of January 13, 2010,

14  since he was not Fountain's cell mate."  (Doc. No. 61 at 6.)  The court notes that inmate Gilbert

15  has declared that officer Hernandez was not working in the unit on the day in question,

16  suggesting for that reason as well that he could not have interviewed plaintiff.  Whether inmate

17  Gilbert's declaration is credible or not will need to be determined by the finder of fact.  The

18  defendants' evidentiary objection is overruled.

19  III.  Qualified Immunity

20         "Government officials enjoy qualified immunity from civil damages unless their

21  conduct violates 'clearly established statutory or constitutional rights of which a reasonable

22  person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

23  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

24  immunity defense, the central questions are (1) whether the facts alleged, taken in the light most

25  favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or

26  constitutional right and (2) whether the right at issue was "clearly established."  Saucier v. Katz,

533 U.S. 194, 201 (2001).

Although the court was once required to answer these questions in order, the United States Supreme Court has clarified that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 555 U.S. at 236-42.

As the court explained at the hearing on the motion for summary judgment, if the plaintiff's version of the facts is accepted as true, defendants had notice that plaintiff faced a substantial risk of serious harm from his cellmate and they disregarded that risk of harm in violation of plaintiff's rights under the Eighth Amendment. See Moreover, the state of the law in 2010, when the alleged constitutional violation took place would have given defendants fair warning that failing to protect a prisoner from a substantial risk of known harm at the hands of his cellmate is unlawful. Farmer, 511 U.S. at 833-34, 847. Accordingly, defendants' motion for summary judgment on qualified immunity grounds should also be denied.

## CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' February 3, 2012 motion for summary judgment (Doc. No. 46) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within fourteen days after service of the objections.  The parties are

3  advised that failure to file objections within the specified time may waive the right to appeal the

4  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: April 17, 2012.

6

7

8  DAD:4
   foun2633.57

9

10

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE